**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **KANDIS BOYD**<br>**4605 Brandon Lane**<br>**Beltsville, Maryland 20705**<br><br>*Plaintiff,*<br><br>v.<br><br>**LEE M. ZELDIN, ADMINISTRATOR,**<br>**U.S. ENVIRONMENTAL**<br>**PROTECTION AGENCY**<br>**1200 Pennsylvania Avenue, N.W.**<br>**Washington, DC 20460**<br><br>*Defendant.* | **JURY TRIAL DEMAND** |

**COMPLAINT**

Comes now Plaintiff Kandis Boyd ("Plaintiff" or "Ms. Boyd"), by and through counsel, and brings this action against Defendant, the U.S. Environmental Protection Agency ("EPA" or "Defendant"), and Lee M. Zeldin, in his official capacity as Administrator of EPA, for violations of federal anti-discrimination and anti-retaliation statutes applicable to federal-sector employment, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, 29 U.S.C. § 633a, and, to the extent applicable, the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and for all other applicable relief.

Plaintiff seeks all available legal and equitable relief, including compensatory damages, back pay, front pay, equitable relief, injunctive relief, and attorneys' fees and costs, as well as

damages for reputational harm and Defendant's failure to follow required personnel procedures and to provide earned compensation and benefits.

## JURISDICTION AND VENUE

1.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

2.	Venue is proper in the United States District Court for the District of Columbia because Defendant conducts business in the District of Columbia, the relevant employment relationship was centered in the District of Columbia, and the unlawful acts occurred in substantial part in the District of Columbia.

## PARTIES

3.	Plaintiff Kandis Boyd is an individual who resides in Beltsville, Maryland.

4.	Defendant is the United States Environmental Protection Agency ("EPA"), an executive agency of the United States Government.

5.	Defendant Lee M. Zeldin is sued in his official capacity as Administrator of the EPA.

## FACTS

6.	Plaintiff Kandis Boyd is an African American female born in 1974 and she identifies as queer.  Plaintiff Boyd has impeccable academic qualifications and has had a stellar federal service career.  She has an undergraduate degree in Meteorology, a Double Masters in Meteorology and Water Resources, and a Phd in Public Administration. In addition, she has certifications in Project Management and Logistics, Transportation and Development.  She was

1

previously employed at the National Oceanic and Atmospheric Administration (NOAA) for 26 years and last held the position of Acting Director of the Weather Program Office, and was selected into the Senior Executive Service at the National Science Foundation and held the position of Deputy Director of Division of Grants and Agreements before joining the EPA.

7.    Plaintiff began employment with the EPA on June 6, 2022 as Director of the Chesapeake Bay Program Office ("CBPO"), a Senior Executive Service ("SES") position subject to a one-year probationary period. Plaintiff highlighted her LGBTQ+ status during her initial interview.  Shortly after Plaintiff arrived at the EPA she began to advocate for equal rights for all employees.  Plaintiff requested facilities and access -related updates  for her CBPO office space, including  all gender bathrooms, security guards, and automatic accessible entryways throughout her employment beginning in June 2022, but those requests were denied.  Plaintiff's management responded by treating her differently than other SES employees in program offices, failing to provide adequate support staff for her program office, excluding her from meetings, refusing to keep one on one meetings, failing to pay travel expenses for a conference she was invited to attend, falsely blaming her for board issues in the Agency, denying her a year end bonus, and ultimately removing her from her SES position.  The harassment was ongoing from both internal and external people associated with the position requirements.

8.    CBPO is part of EPA Region 3. Region 3 senior leadership is based in Philadelphia, Pennsylvania, while CBPO is located in Annapolis, Maryland. Plaintiff primarily worked from Annapolis, Maryland, but frequently traveled to events across a six state area and the District of Columbia.

9.    At all relevant times, Adam Ortiz, who appears to be a white male but identifies as Hispanic, served as the Region 3 Regional Administrator, and Diana Esher, a white female,

served as the Deputy Regional Administrator. Plaintiff officially reported directly to Ortiz. Although Ortiz characterized his and Esher's roles as "co-managers," Ortiz exercised final decision-making authority over all matters affecting Plaintiff's employment. This purported co-management structure was never formalized in writing, resulting in significant confusion regarding duties, responsibilities, and the chain of command.

10.    Plaintiff was selected for the CBPO Director role by a panel that included Ortiz, Esher, Catherine Libertz, and Cecil Rodrigues.

11.    Plaintiff's duties as CBPO Director included setting office direction, managing staff, coordinating with Region 3 leadership and EPA headquarters, and engaging external Chesapeake Bay Program partners and stakeholders.  Unlike other SES members in Region 3, Plaintiff was the only person to lead a regional program, which involved heavy communication, engagement, and in-person events across a six-state area including the District of Columbia.

12.    Soon after Plaintiff began employment, Ortiz and Esher directed SES employees to report to the Region 3 office in Philadelphia on the first Monday and Tuesday of each pay period.

13.    Compliance with the Philadelphia reporting requirement required Plaintiff to travel more than two hours each way from the CBPO office area to Philadelphia. As a result, Plaintiff's workdays routinely exceeded 12 hours, and she was not provided compensation in the form of credit hours or other equivalent schedule/leave relief for this additional time. However, her SES peers were permitted to work a MaxiFlex schedule, giving them greater flexibility with their schedule. Both her predecessor and successor were allowed a MaxiFlex Schedule, but Plaintiff was not.

14.    Philadelphia meetings were sometimes canceled without advance notice, even after Plaintiff had already traveled to the Region 3 office, thereby imposing additional time and expense burdens on Plaintiff.

15.    In July 2022, Plaintiff met with the Maryland Congressional Delegation as part of her CBPO duties, accompanied by the Acting Region 3 Office of Public Affairs ('OPA') Director. Plaintiff did not receive any written guidance from OPA outlining an approval or pre-clearance process for meetings with elected officials.

16.    Although Plaintiff began working at CBPO in June 2022; however, she was informed that her Communications Strategist, Virginia Nurk—a new hire—would not begin until August 2022. After she commenced employment throughout 2022, Plaintiff repeatedly requested adequate communications support and a qualified communications specialist to fulfill CBPO's external-facing responsibilities. Due to the lack of communications support staff, Plaintiff Boyd was frequently required to perform tasks that were typically delegated to a communications specialist.

17.    Plaintiff also raised concerns regarding administrative support. For more than four months after her start date, she lacked effective administrative assistant support, while other Region 3 SES employees had such support during that same period, including Kate McManus, Cathy Libertz, and Samantha Beers. On October 31, 2022, Plaintiff requested the immediate removal of Robin Cecil due to poor performance; however, Region 3 declined Plaintiff Boyd's request.

18.    Plaintiff Boyd's office was responsible for monitoring the restoration of the Chesapeake Bay and relied upon monitoring maps measuring progress created by the U.S. Geological Survey ("USGS").  In August and September 2022, Ortiz demanded that Plaintiff

4

Boyd get altered monitoring maps to cast the office's work in a more positive light.  On October 5, 2022, Plaintiff met with Ortiz and explained that a monitoring map at issue was the property of the U.S. Geological Survey ("USGS") and could not be altered.  Ortiz became frustrated with Plaintiff Boyd because she reported to him that a monitoring map was the property of the USGS and could not be altered.

19.    On October 11, 2022, Plaintiff communicated to the Chesapeake Bay Program Executive Council that the 2025 goals and outcomes would not be met. Esher and Ortiz were aware months before Plaintiff's arrival that the 2025 goals would not be met; however, they waited until after Plaintiff was onboard to instruct her to notify the Council. Beginning in October 2022, Plaintiff also raised concerns about a Chesapeake Bay constituent who harassed her on October 5, 2022. Plaintiff requested that the Agency address the situation and block the constituent's email communications. Plaintiff did not receive the requested protective action. Plaintiff's Deputy had arranged a meeting with the constituent and Plaintiff but had ended the meeting early after feeling uncomfortable in the presence of the constituent. Plaintiff reported this verbally to Ortiz in early October 2022 and followed up with subsequent emails. Ortiz later used profanity in an email to Plaintiff and CBPO staff regarding talking points for a senior EPA official in October 2022.

20.    On January 3, 2023, Plaintiff coordinated a meeting with Region 3 OPA and CBPO communications staff regarding CBPO communications needs, the Chesapeake Bay Program's 40th anniversary messaging, and the need for coordinated support between Region 3 and EPA headquarters. Esher, Gail Scott, and Ortiz attended.

21.    On January 20, 2023, Plaintiff was notified that she would not receive a cash bonus.  Plaintiff Boyd was the only SES employee reporting to Ortiz who did not receive a cash

bonus.  Other SES employees reporting to Ortiz, including (names and positions) received cash bonuses for this performance period. Plaintiff was denied a cash bonus even though her program met its performance objectives and had greater responsibilities than other program offices.  Ortiz failed to provide an explanation of why Plaintiff was denied a cash bonus.

22. On January 26, 2023, Virginia Nurk notified Plaintiff that she would no longer manage weekly communications reports, leaving Plaintiff without support. In January 2023, Region 3 OPA implemented a restructuring that reduced or eliminated communications support previously provided to CBPO leadership. Plaintiff did not receive timely or clear written notice outlining the scope or impact of these changes before they affected her work.

23.    On January 25, 2023, Gail Scott met with CBPO leadership and stated that the Communications Branch team had been "reset … to meet the Administration's and Adam[Ortiz]'s needs for more robust external engagement." Although the restructuring had been finalized in 2022, Plaintiff was not informed of the change until January 2023, and only after a meeting emphasizing the need for enhanced communications support for the 40th CBPO anniversary multi-state celebration.

24.    Plaintiff sought clarification about the bonus decision after being advised by Human Resources that she could be eligible for a bonus, but she did not receive a substantive response from Ortiz or Esher. Plaintiff was the only SES employee in Region 3 who did not receive a bonus during the relevant period and the only one not placed on an alternative work schedule permitting an alternate work schedule after requesting multiple times. The performance ratings and work schedules for other SES members in Region 3 confirm that she was treated differently.

25. The January 25, 2023 "reset" meeting introduced a new directive requiring each state to develop its own communications plan or approach. Following this directive, Plaintiff's communications needs were treated differently. Because Plaintiff had multi-state responsibilities covering six states and the District of Columbia, this change significantly increased the complexity of managing communications.

26. On January 30, 2023, during a senior staff meeting, Plaintiff raised an upcoming invitation to speak at an environmental legislative event scheduled for January 31, 2023. Under prior practice, such engagements would have been coordinated through OPA; however, the recent reset eliminated the opportunity for that coordination. As a result, Plaintiff's supervisors characterized the discussion as involving engagement with elected officials and expressed concerns regarding pre-clearance, and later cited this incident as a basis for Plaintiff's removal from her position, characterizing it as involving unauthorized meetings with elected officials.

27. Plaintiff proceeded with CBPO responsibilities in an environment where key communications processes were not documented and support was inconsistent. Ortiz later claimed that Plaintiff met with a Pennsylvania Senator without approval. This assertion is false as Ortiz's assistant scheduled the meeting between Plaintiff and the Pennsylvania State Senator. Plaintiff retained documentation, including the scheduling email which stated, "Adam wants Kandis at the meeting."

28. On January 19, 2023, Plaintiff requested travel to the National Society of Black Engineers ("NSBE") Conference to participate in an EPA Technical Leadership Forum panel, for which she had been specifically invited to serve as a panelist, scheduled for February 7, 2023. In contrast, the two heterosexual male employees who attended instead of Plaintiff were merely attendees and were not invited to participate in any conference programming.

29.     Esher initially approved Plaintiff's NSBE travel request; however, the travel was not processed. Plaintiff later learned, after the event had passed, that Esher had later declined the request without notifying her.

30.     Plaintiff learned that Region 3 personnel communicated to the NSBE panel coordinator that Plaintiff would not attend, while Plaintiff did not receive timely notice that her participation had been withdrawn.

31.     On March 20, 2023, Plaintiff received an email indicating that her NSBE travel request had been declined, notwithstanding the prior approval and without any direct notice to her that the travel had been denied. Plaintiff subsequently learned that two heterosexual male employees were permitted to attend the event, while she was denied the opportunity to attend the event in person.

32.     During this same period, Plaintiff's participation in additional community-related activities, including an MLK Jr. Day cleanup associated with the Anacostia River in Washington, D.C., was initially declined. Plaintiff agreed to travel on a Saturday to receive approval to attend the event. Plaintiff received no compensation (i.e. credit hours) for the event.

33.     Plaintiff was also subject to restrictive local-travel approval requirements that impeded her ability to participate in Chesapeake Bay Program activities, which were not imposed on other program directors.

34.     Plaintiff was asked to be interviewed by the Baltimore Sun regarding the Chesapeake Bay Program's 40th anniversary in early 2023. OPA and Region 3 leadership made a unilateral decision to conduct the interview without Plaintiff and excluded her from participating. Plaintiff's predecessor, Dana Aunkst, a white male, was treated differently during his employment and the end of his employment and transition to a new position. He was permitted

8

to be interviewed by Chesapeake Bay-focused media outlets and to provide quotes highlighting his work, and his transition period lasted approximately two months.

35. On March 6, 2023, Esher reported to Ortiz that she had provided guidance to Plaintiff and referenced 'feedback' purportedly received from external stakeholders. Neither Esher nor Ortiz provided Plaintiff any written notice or documentation of any performance deficiencies or concerns from any external stakeholder. Plaintiff first learned of any purported external stakeholder 'complaints' on the day she was removed from her position.

36. From February 15, 2023 through April 24, 2023, Ortiz canceled scheduled one-on-one meetings ("tag ups") with Plaintiff, cutting off regular strategic discussions during that period.

37. Plaintiff was not notified before April 24, 2023 that she was in jeopardy of receiving a less-than-satisfactory performance outcome or being removed from her SES position.

38. On April 24, 2023, Ortiz and Esher met with Plaintiff to inform her that she was being removed from her SES position as Director of CBPO and reassigned to a GS-15 position, effectively a demotion. Multiple emails from Ortiz referred to her new role as "Special Advisor," although her official title in EPA documentation is "Senior Advisor."

39. Plaintiff was not provided a written removal summary or written documentation at the time of the April 24, 2023 meeting, despite performance documentation requiring a removal summary.

40. At the April 24, 2023 meeting, Plaintiff was not informed of rights and responsibilities associated with the removal decision, including appeal or complaint options.

41. Later on April 24, 2023, Plaintiff emailed requesting a follow-up meeting. Ortiz denied the request.

9

42. On May 2, 2023, Plaintiff was notified that she had received a lower performance rating than anticipated. The email stated that "your performance with regard to technical leadership, communication, and building effective coalitions was unacceptable." However, technical leadership is not listed as a performance requirement in the PARS performance document. Accordingly, Plaintiff was penalized for failing to meet a requirement that was neither agreed upon nor formally documented.

43. After the reassignment/demotion effective May 2, 2023, Plaintiff was excluded from front office meetings.

44. After May 2, 2023, Plaintiff did not receive updated Performance and Rating Standards ("PARS") reflecting her new role and duties.

45. On May 7, 2023, Plaintiff learned that her job series was changed from the 0340 Program Management Series to the 1301 Physical Scientist Series, limiting promotional pathways and opportunities tied to Plaintiff's background and career track. When Plaintiff's predecessor was removed from his position, he retained his same job series. Plaintiff's prior two positions were in the 0340 Program Management Series.

46. As a result of the reassignment/demotion, performance actions, exclusion from meetings, and job-series change, Plaintiff experienced loss of SES status and compensation opportunities, reputational harm, and diminished career prospects. Plaintiff did not receive an NSF award of approximately $3,500 to which she was entitled.

**COUNT I**
**Title VII — Disparate Treatment (Race, Color, Sex, and Sexual Orientation)**
**(42 U.S.C. § 2000e-16)**

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

47.     Plaintiff is a member of protected classes under Title VII, including race (Black), color (dark brown), sex (female), and sexual orientation (queer).

48.     Plaintiff was qualified for her position and performed her duties at a level meeting Defendant's legitimate expectations, including receiving positive remarks in bi-weekly updates and a top rating in at least one performance element.

49.     Defendant subjected Plaintiff to adverse employment actions and materially adverse terms and conditions of employment, including but not limited to: exclusion from meetings; denial of support and opportunities; implementation of a new performance plan in April 2023 stating that Plaintiff would report directly to the Regional Administrator (Ortiz), but Plaintiff had only one meeting with Ortiz over a two-year period, making it nearly impossible to execute her duties; removal from her SES Director position and demotion/reassignment to a GS-15 role effective April 24-May 8, 2023.

50.     These actions occurred under circumstances giving rise to an inference of discrimination, including disparate treatment compared to similarly situated peers/subordinates outside Plaintiff's protected classes (including white heterosexual employees), differential reprimands, differential access to meetings and resources, and the pattern of decisionmaking.

51.     Defendant's actions were taken because of Plaintiff's race, color, sex, and/or sexual orientation, in violation of Title VII.  Similarly situated individuals outside Plaintiff's protected class were treated differently.  The reasons given for Plaintiff's removal from her position are false.  The Agency failed to follow its own personnel policies in denying Plaintiff a performance bonus and removal of her duties and removal from her position.   Finally, the Agency proffered shifting and conflicting explanations for her removal from her position,

11

claiming that her removal was based in part on failure to meet technical requirements for her position when no technical requirements were listed in her performance plan and goals.

52.      As a direct and proximate result, Plaintiff suffered economic harm, loss of professional standing and opportunities, emotional distress, and other damages.

## COUNT II
**Title VII — Hostile Work Environment (Race, Color, Sex, and Sexual Orientation)**
**(42 U.S.C. § 2000e-16)**

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

53.      Plaintiff was subjected to unwelcome conduct in the workplace, including repeated exclusion, undermining, differential reprimands, microaggressions (including being labeled "not a good fit" and "not articulate"), denial of access to leadership communication, and other conduct. Defendant subjected Plaintiff to adverse employment actions and materially adverse terms and conditions of employment, including but not limited to: exclusion from meetings; denial of support and opportunities; implementation of a new performance plan in April 2023 stating that Plaintiff would report directly to the Regional Administrator (Ortiz), but Plaintiff had only one meeting with Ortiz over a two-year period, making it nearly impossible to execute her duties; removal from her SES Director position and demotion/reassignment to a GS-15 role effective April 24-May 8, 2023.

54.      The conduct was based on Plaintiff's protected traits (race, color, sex, and/or sexual orientation) and was sufficiently severe or pervasive, individually and cumulatively, to alter the conditions of Plaintiff's employment and create an abusive working environment, including by interfering with Plaintiff's ability to perform her duties and effectively carry out her responsibilities.

55.    Defendant is liable for the hostile work environment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award the following relief:

A. A declaration that Defendant's acts and omissions described herein violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.;

B. An order enjoining Defendant and its officers, agents, employees, and those acting in concert with them from engaging in unlawful discrimination, retaliation, and harassment, and requiring Defendant to take all appropriate corrective action;

C. Reinstatement to Plaintiff's prior position (or a substantially equivalent position), or, in the alternative, an award of front pay in lieu of reinstatement;

D. An award of back pay, with interest, and all benefits, including but not limited to lost wages, lost bonuses, lost contributions to retirement, lost leave, and other emoluments of employment, to make Plaintiff whole;

E. An award of compensatory damages as permitted by law, including for emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses (Title VII);

F. An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and other applicable authority;

G. Pre-judgment and post-judgment interest as permitted by law;

H. Such other and further relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Date: April 29, 2026

Respectfully submitted,

/s/ *David A. Branch*
David A. Branch, D.C. Bar No. 438764
Law Office of David A. Branch &
Associates, PLLC
1120 Connecticut Avenue, NW, Suite 500
Washington, D.C. 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: davidbranch@dbranchlaw.com

14